FILED ___ ENTERED
___ LODGED ___ RECEIVED

JAN 16 2014

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| IN THE MATTER OF THE SEARCH OF THE SUBJECT ELECTRONIC DEVICES LISTED IN ATTACHMENT A | Case No. **14-0001TJS** <br><br> UNDER SEAL |
|---|---|

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Special Agent ("SA") **John M. Sheridan**, being duly sworn, deposes and states as follows:

1. This is an Affidavit in support of a search warrant authorizing the search of a digital camera and a BlackBerry cell phone identified in Attachment A and hereinafter referred to as the "**Subject Electronic Devices**." As detailed further below, the **Subject Electronic Devices** were found in a backpack that investigators believe was carried by Terrence Tyrell Major during the commission of an armed robbery at the Kentucky Fried Chicken ("KFC") restaurant located at 708 Nursery Road, Linthicum Heights, Maryland on or about October 3, 2013. The **Subject Electronic Devices** are now in FBI custody.

2. The applied-for warrant would authorize the forensic examination of the **Subject Electronic Devices** for the purpose of identifying electronically stored data particularly described in Attachment B.

3. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with

other law enforcement officers and other individuals. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated. Summaries and descriptions, including quotations, of recorded conversations are based on a review of audio recordings and draft transcripts thereof. In some instances, as indicated below, specific quotations are based on information obtained from confidential sources who participated in the conversations. I have set forth only the facts I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of 18 U.S.C. § 1951 are presently located within the **Subject Electronic Devices**.

## YOUR AFFIANT

4. I am a Special Agent of the FBI and, as such, I am charged with enforcing all laws in all jurisdictions of the United States, its territories, and its possessions. I have been a Special Agent since 1997 and I have investigated violent crimes including bank robberies, commercial robberies, and drug trafficking. I have applied for and executed numerous search warrants, including search warrants for digital evidence in the form of computer hard drives, cellular telephones, and other forms of digital media.

5. I am familiar with the mode of operation of individuals who commit armed robberies, including, but not limited to, their use of electronic devices to plan and coordinate those robberies and means of escape.

6. Based on my knowledge, training, and experience, individuals committing armed robberies frequently use cellular telephones, communication devices, and other electronic media storage to further their illegal activities. Based upon your affiant's training, experience and participation in this and other armed robbery investigations, I know the following:

a. The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity. BlackBerry cell phones have both digital storage capacity and digital camera capabilities.

b. Individuals planning armed robberies often use digital storage devices to maintain telephone number "contact lists" of individuals who may have assisted in the planning of this and other criminal activity.

c. Individuals planning armed robberies often use photography to document planned robbery targets and areas of egress to be used after the commission of the crime.

d. It has been my experience that individuals who possess or own hand guns or other weapons frequently photograph themselves holding the hand guns or other weapons.

e. Additionally, photographs on a suspect's digital device sometimes show the suspect wearing clothes or masks that appear on surveillance videos or that are recovered at the scene of a robbery. In this case, based on my training and experience, your affiant believes that there is probable cause to believe that the camera and Blackberry contain photographs of the handgun, the syringe, and/or the clothing used in the robbery.

f. Finally, based on my training and experience, individuals who commit robberies often use cellular telephones to communicate with co-conspirators via phone calls and text messages.

## PROBABLE CAUSE

7. I have been involved in an on-going investigation into a robbery. The investigation has included reviewing surveillance footage, interviewing victims and other witnesses, and conducting searches for physical evidence.

8.     The investigation has revealed that on October 3, 2013, an unknown subject ("the Subject"), believed to be Terrence Tyrell Major, robbed the KFC restaurant located at 708 Nursery Road, Linthicum Heights, Maryland at gunpoint and fled with $649.00 in U.S. currency, all in violation of 18 U.S.C. § 1951. Your affiant's investigation revealed that the KFC restaurant located at 708 Nursery Road, Linthicum Heights, Maryland received goods from outside the state of Maryland, thereby affecting interstate commerce.

9.     Specifically, around 9:00 p.m. on October 3, 2013, the Subject entered the KFC and pointed a gun at victim employee De'Shawn Alston. The Subject entered the front counter area of the KFC through a side employee door and proceeded to point the gun at Alston before stepping into the kitchen area of the KFC.

10.    The Subject was wearing a dark mask and armed with a handgun. Additionally, the Subject wore dark jeans, a dark colored New York Yankees baseball cap, a denim shirt with buttons on the front, and a backpack with a noticeable blue color on the backpack.

11.    Upon seeing the Subject, an employee named Logan Brace told her night manager, Natalie Skipwith, to call the police. Skipwith called 911 and continued speaking with the 911 operator during the course of the robbery.

12.    The Subject entered the kitchen area and demanded that Brace open the safe. The Subject grabbed Brace by the collar, forced her to go to the front counter area, and struck her in the face with the gun. The Subject told Brace she had three seconds to open the register or he was going to shoot her. The Subject then pulled off Brace's glasses and took a syringe from his shirt pocket. The Subject used the syringe to squirt liquid on the counter and the floor near the register, telling Brace the syringe contained the "AIDS" virus and he was going to stab her with

the syringe. Brace opened the cash register drawer, and the Subject removed cash from the drawer. The Subject left the syringe on the counter.

13.     The Subject then approached Alston in the drive-through area of the restaurant and demanded that Alston open the cash register drawer. Alston complied. The Subject retrieved money from the drawer, walked past Brace, and exited through the same door from which the Subject entered.

14.     While the robbery was taking place, Skipwith was speaking with a 911 dispatcher and provided a description of the Subject. Police received the robbery call at 9:14 p.m. A description of the robbery subject was provided to responding units at 9:19 p.m. A K-9 unit and a search helicopter were called to assist in the search.

15.     Soon after the Subject fled the KFC, a responding officer observed what he believed to be a black bag moving behind a tree in the area of 805 Barkwood Court, Linthicum Heights, Maryland. I have been to the area and I am aware that 805 Barkwood Court is approximately 300 yards from the KFC, approaching the Baltimore Washington Parkway via Nursery Road. The responding officer then observed an individual fleeing. The responding officer and other Anne Arundel County Police Officers converged on the area and located the Subject, later identified as Terrence Tyrell Major, and placed him under arrest at 9:32 p.m. Major was wearing clothing consistent with the description provided by Brace. Soon after Major's arrest, Brace was driven to the arrest scene and positively identified him as the same person who had robbed the KFC.

16.     Near the arrest scene, officers found a backpack matching the backpack worn by the Subject during the commission of the robbery. Within the backpack was a blue folder, which matched the blue color at the top of the backpack that was observed on the surveillance video.

The blue folder contained personal identifying documents for Terrence Tyrell Major, with a date of birth of 4/17/1962. Also found in the backpack were a syringe, a two dollar roll of nickels, a digital camera, and a BlackBerry digital device.[1]

17. Officers also recovered a left-foot Nike tennis shoe. During an interview attempt with Major, investigators observed that he was wearing only a right-foot Nike tennis shoe.

18. At the robbery crime scene, investigators recovered a syringe matching the syringe that was found in the abandoned backpack.

19. The following day, officers conducted an additional search of the area where Major was arrested. The officers found a dark-colored New York Yankees baseball cap, a wallet with $648.00 in United States currency, black framed eye glasses, and photo identification belonging to Terrence Tyrell Major.

---

[1] The government believes that the camera had been abandoned, and for that reason, Anne Arundel County police officers properly conducted a warrantless search of the camera by reviewing the photographs that it contained. The officers then orally described the contents of some of those photographs to me. The officers did not conduct any search of the Blackberry. Neither I nor any other FBI agent has viewed any of the photographs or otherwise conducted any search of the camera or Blackberry.

In an abundance of caution, I am applying for a search warrant in the event that the camera was not abandoned. Assistant United States Attorney Scott Lemmon has advised me that under Supreme Court case law I may seek a search warrant for the camera even if the earlier search by Anne Arundel County police officers was improper. *See Murray v. United States*, 487 U.S. 533, 537 (1988) (holding that when search warrant is issued following an improper warrantless search of the same premises, evidence recovered in later search is admissible if government shows that "no information gained from the illegal [search] affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it"); *United States v. Mowatt*, 513 F.3d 395, 403–405 (4th Cir. 2008) (same).

To avoid influencing the Court's decision regarding whether to grant the search warrant, this affidavit does not include the police officers' description of the photographs. The officers' description of the photographs has not influenced my decision to seek a search warrant for the contents of the digital camera. It is my practice to always seek search warrants for the contents of digital devices, particularly in cases such as this one where it is important to verify the identity of the suspect and where the firearm that was used to commit the robbery was never recovered.

20. The results of the KFC audit determined losses totaling $649.26 in U.S. currency.

21. Officers conducted a thorough search between the robbery scene and the arrest scene in an attempt to find the firearm that was used during the robbery. The search was conducted over four different occasions by your affiant, other FBI agents, members of the Anne Arundel County Police Department, and members of the Anne Arundel County Fire Department. The firearm has not yet been found.

22. Based on the above information, I submit that there is probable cause to believe that the camera, the Blackberry phone, and the records therein contain evidence, fruits, and/or instrumentalities of violations of 18 U.S.C. § 1951. As a result of this information, your affiant seeks a warrant authorizing the forensic examination of the **Subject Electronic Devices** for the purpose of identifying electronically stored data particularly described in Attachment A, using the protocols described on Attachment B.

23. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the robbery as potential co-conspirators will not be searched at this time. Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

24. Moreover, it is respectfully requested that this Court issue an order pursuant to 18 U.S.C. § 3103a delaying notice of this warrant because there is reasonable cause to believe that

providing immediate notification of the execution of the warrant would have an adverse result. Specifically, the notification of the execution of the warrant would alert Major and potential co-conspirators to the investigation and likely cause the potential co-conspirators to change phones and adjust other patterns, thus impeding the investigation.

## CONCLUSION

Based upon the information set forth in this affidavit, I believe that sufficient probable cause exists to believe that in the **Subject Electronic Devices**, there is evidence that Terrence Tyrell Major committed Interference with Commerce by Threats or Violence in violation of 18 U.S.C. § 1951.

WHEREFORE, in consideration of the facts presented, I respectfully request that this Court issue a search warrant for the **Subject Electronic Devices**, and authorize the search and the seizure of the items described in Attachment A, according to the protocols set forth in Attachment B where applicable, which constitute fruits, evidence and instrumentalities of violation 18 U.S.C. § 1951, which prohibits the interference with commerce by threats or violence.

John M. Sheridan
Special Agent, Federal Bureau of Investigation

Sworn to before me this 2 day of January, 2014.

The Honorable Timothy J. Sullivan
United States Magistrate Judge

## ATTACHMENT A – DESCRIPTION OF LOCATIONS TO BE SEARCHED

The camera to be searched is further described as a silver Kodak Easy Share C743 digital camera with serial number KCGGH63449900. The camera is approximately 3" x 4" x 1" in size. A gray hand strap is affixed to the camera. The camera is currently in the custody of the FBI evidence room at the FBI Baltimore field office located at 2600 Lord Baltimore Drive, Baltimore, Maryland 21244. The camera will be charged and powered on. If the camera does not power on, batteries will be provided to the camera to initiate power. Photos currently saved on the camera will be reviewed. Additionally, any smart card housed in the camera will be removed and placed in a computer viewing station within the Baltimore field office. The smart card contents will be reviewed and copies of photos on the smart card will be printed and saved to an external thumb drive.

The BlackBerry to be searched is a black BlackBerry/Cricket cell phone with FCC number L6ARDF30CW, MEID – DEC:268435459715849671. The camera is currently in the custody of the FBI evidence room at the FBI Baltimore field office located at 2600 Lord Baltimore Drive, Baltimore, Maryland 21244. The device will be charged and powered on. The device and all readable and searchable contents will be downloaded to a "CellBrite" device. The "CellBrite" device allows the user to bypass any password protected utility on the phone. The contents downloaded on the CellBrite device will then be copied to a readable computer disc and reviewed by your affiant. A search warrant return will be provided to the Court thereafter.

## ATTACHMENT B – SEARCH PROTOCOLS

This warrant authorizes the search of electronically stored information and other documents related to the items listed on Attachment A

Because of the possibility that the files examined pursuant to the warrant will include information that is beyond the scope of what the United States has demonstrated the existence probable cause to search for, the search shall be conducted in a manner that will minimize to the greatest extent possible the likelihood that files or other information for which there is not probable cause to search is not viewed.

While this protocol does not prescribe the specific search protocol to be used, it does contain limitations to what government investigators may view during their search, and the searching investigators shall be obligated to document the search methodology used in the event that there is a subsequent challenge to the search that was conducted, pursuant to the following protocol:

With respect to the search of any digitally/electronically stored information that is seized pursuant to this warrant, and described in Attachment A hereto, the search procedure shall include such reasonably available techniques designed to minimize the chance that the government investigators conducting the search will view information that is beyond the scope for which probable cause exists.

The following list of techniques is a non-exclusive list which illustrates the types of search methodology that may avoid an overbroad search, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein:

    a.    Use of computer search methodology to conduct an examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth herein by specific date ranges, names of individuals, or organizations;

    b.    Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

    c.    Physical examination of the storage device, including digitally surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein; and

    d.    Opening or reading portions of files that are identified as a result of conducting digital search inquiries in order to determine their relevance.